946 A.2d 596 (2008)
400 N.J. Super. 154
Anna I. BOLZ, Plaintiff-Respondent,
v.
Joseph A. BOLZ, Defendant-Appellant, and
Favian E. Herrera and City of Englewood, Defendants-Respondents.
No. A-0916-06T5
Superior Court of New Jersey, Appellate Division.
Argued October 15, 2007.
Decided May 8, 2008.
Albert E. Fershing, West Orange, argued the cause for appellant (Shurkin & Fershing, attorneys; Mr. Fershing, of counsel and on the brief).
Kevin C. Corriston, Hackensack, argued the cause for respondent Anna Bolz (Breslin & Breslin, attorneys; Mr. Corriston, of counsel and on the brief). James J. Markham, III, argued the cause for respondents Favian Herrera and City of Englewood.
Before Judges STERN, A.A. RODRÍGUEZ and C.L. MINIMAN.
The opinion of the court was delivered by:
*597 RODRÍGUEZ, A.A., P.J.A.D.
In this appeal we examine the combined effect of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3; the Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-1 to -5; and the Comparative Negligence Act (CNA), N.J.S.A. 2A:15-5.1 to -5.17, when there is a collision between a private automobile and an automobile that is owned by a public entity and driven by a public employee. We hold that, despite the fact that a public entity is not liable to pay damages unless plaintiff sustained a permanent injury as defined in the TCA, both drivers are deemed "tortfeasors" if they are found to have been negligent and their negligence was a proximate cause of the accident. Therefore, allocation or apportionment of each driver's negligence or fault must be assessed, even if there is a possibility that the public entity may not be liable for damages. Put a different way, although no damages can be awarded against a public entity or employee for pain and suffering if the injuries caused by an accident do not meet the threshold set by the TCA, the public employee is, nonetheless, a tortfeasor pursuant to the JTCL and the CNA and this affects the judgment against the private tortfeasor.

I
Defendant, Joseph A. Bolz (Bolz), appeals from a judgment entered following a jury trial in favor of Anna I. Bolz (plaintiff) for $75,000 plus prejudgment interest, a judgment of no cause of action in favor of public entity defendants City of Englewood (Englewood) and Favian E. Herrera, and a judgment against Bolz on a cross-claim for contribution.
These are the salient facts. On May 10, 2004, plaintiff was a passenger in an automobile owned and operated by Bolz. As Bolz was driving on South Van Brunt Street he saw a tractor-trailer, owned by Englewood and operated by its employee, Herrera. Bolz stopped his automobile and waited while Herrera backed up. The tractor-trailer struck Bolz's automobile, causing injury to plaintiff.
Plaintiff sued Herrera and Englewood. The public entities answered and joined Bolz as a third party. Subsequently, plaintiff filed an amended complaint joining Bolz as a defendant. She requested the following relief as to all defendants:
As a result of the aforesaid acts of negligence and carelessness of the Defendants, jointly, severally, or in the alternative, the Plaintiff, Anna I. Bolz was severely injured, disabled and disfigured; including a comminuted fracture of the proximal left tibia[1], suffered and will suffer in the future great pain and torment, both mental and physical; and was and will be prevented from attending to her usual duties for a long period of time. . . .
Alan Miller, M.D., an orthopedist, testified for plaintiff. He opined that plaintiff sustained a wrist fracture resulting in decreased range of motion of the wrist, as well as neck and back injuries.
At trial, the attorney for Herrera and Englewood acknowledged in his summation that Herrera was negligent. Based on that, the judge directed that the jury find that Herrera and Englewood were negligent. Plaintiff drafted the following proposed jury verdict sheet with respect to the remaining disputed issues:

*598 2. Was defendant, Joseph Bolz, negligent in the operation of his motor vehicle?
 Yes: ___ No: ___
 Jurors' Vote: ___
IF YOUR ANSWER TO EITHER QUESTION NO. 1 OR NO. 2, OR BOTH IS "YES", PROCEED TO THE NEXT QUESTION. IF YOUR ANSWER TO BOTH QUESTIONS NO. 1 AND NO. 2, ARE "NO", CEASE YOUR DELIBERATIONS, AND RETURN YOUR VERDICTS.
3. Has Plaintiff, Anna Bolz, proven by a preponderance of the credible evidence that she sustained a substantial permanent injury, that was proximately caused by defendant, Favian Herrera (and the City of Englewood)?
 Yes: ___ No: ___
 Jurors' vote: ___
PROCEED TO NEXT QUESTION.
4. Has Plaintiff, Anna Bolz, proven by a preponderance of the credible evidence that she sustained a permanent injury that was proximately caused by defendant, Joseph Bolz?
 Yes: ___ No: ___
 Jurors' vote: ___
IF YOU HAVE ANSWERED "YES", TO BOTH QUESTIONS NO. 3, AND, NO. 4, PROCEED TO NEXT QUESTION. IF YOU HAVE ANSWERED "YES", TO EITHER QUESTIONS NO. 3, OR NO. 4, PROCEED TO QUESTION NO. 6 IF YOU HAVE ANSWERED "NO", TO BOTH QUESTIONS NO. 3 AND NO. 4, CEASE YOUR DELIBERATIONS AND RETURN YOUR VERDICT.
5. [Comparative Negligence Question]
6. What amount of money will fairly and reasonably compensate Plaintiff, Anna Bolz, for her injuries and losses?
a) Disability, impairment, loss of enjoyment of life; pain and suffering due to injuries proven to be proximately caused by this accident of May 10, 2004?
Bolz objected to the proposed jury verdict sheet because, in his opinion, having question No. 3 before question No. 5 precluded the jury from deciding the comparative negligence question if it did not find that plaintiff sustained a substantial permanent injury. Over Bolz's objection, the judge accepted plaintiff's proposed verdict sheet.
During deliberations, the jury asked the following question: "Why is one defendant tried for substantial permanent injury, Mr. Herrera, and the other defendant being tried for only a permanent injury Mr. Bolz?" The judge responded:
In regard to Mr. Bolz, Mr. Bolz is being tried pursuant to the body of law we call verbal threshold. They both require permanent injury. Mr. Herrera and the City of Englewood is being charged because of the Tort Claim Act. And they both define permanent injury, but the verbal threshold requires in this case the plaintiff alleges that she has suffered a permanent injury as to the result of a motor vehicle accident.
. . .
In regard to the municipality, which is Mr. Herrera and the City of Englewood, the Tort Claim Act also requires a permanent injury, but part of the definition of what a permanent injury is, is as follows: With respect to permanent injury the plaintiff must prove a permanent bodily function . . . and it says the loss need not be total but must be substantial. Mere limitation is insufficient. By that I mean plaintiff must prove a loss by a demonstration by objective credible medical evidence of a permanent injury *599 because damages for temporary injuries are not recoverable. The proof must be objective and credible. Objective means that the evidence must be verified by physical examination, diagnostic testing, and/or observation.
Then a juror asked: "Can you just read the second part again." The judge explained again the concept of "substantial permanent injury" as defined by the TCA.
The jury found that both Herrera and Bolz were negligent, and that plaintiff sustained a permanent injury that was proximately caused by the negligence of defendant Bolz. However, the jury found that plaintiff did not sustain a substantial permanent injury. Because of this finding, the jury skipped question No. 5, the comparative negligence question, and set damages at $75,000. The judge molded the verdict into a judgment against Bolz only in the amount of $75,000. Bolz moved for a new trial. The judge denied the motion.

II
On appeal, Bolz contends that the jury verdict sheet "improperly limited proximate cause to injury." We agree with plaintiff's argument, which we restate as follows: The jury verdict sheet deprived Bolz of a jury determination as to whether Herrera's negligence was a proximate cause of the accident, and if so, Herrera's percentage of responsibility for the happening of the accident.
We begin our analysis by quoting the portions of the statutes that are relevant to this discussion.
The Comparative Negligence Act provides:
a. In all negligence actions and strict liability actions in which the question of liability is in dispute . . . the trier of fact shall make the following as findings of fact:
(1) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages.
(2) The extent, in the form of a percentage, of each party's negligence or fault. The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%.
[N.J.S.A. 2A:15-5.2.]
Moreover, "New Jersey law favors the apportionment of fault among responsible parties." Verni ex rel. Burstein v. Stevens, 387 N.J.Super. 160, 206, 903 A.2d 475 (2006), certif. denied, 189 N.J. 429, 915 A.2d 1052 (2007); Boryszewski v. Burke, 380 N.J.Super. 361, 374, 882 A.2d 410 (App.Div.2005), certif. denied, 186 N.J. 242, 892 A.2d 1288 (2006). The Supreme Court has noted that "[t]he guiding principle of our State's comparative fault system has been the distribution of loss `in proportion to the respective faults of the parties causing that loss.'" Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 114, 853 A.2d 940 (2004) (quoting Blazovic v. Andrich, 124 N.J. 90, 107, 590 A.2d 222 (1991)). For that reason, the CNA "mandates the apportionment of fault" when liability is in dispute. Boryszewski, supra, 380 N.J.Super. at 374-75, 882 A.2d 410.
Pursuant to the CNA, a plaintiff may collect:
a. The full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages.
. . .
c. Only that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less *600 than 60% responsible for the total damages.
[N.J.S.A. 2A:15-5.3.]
The TCA provides, in pertinent part that generally:
a. Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person.
. . .
c. A public employee is not liable for an injury where a public entity is immune from liability for that injury.
[N.J.S.A. 59:3-1.]
Moreover, the JTCL "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Holloway v. State, 125 N.J. 386, 400-01, 593 A.2d 716 (1991); Verni, supra, 387 N.J.Super. at 207, 903 A.2d 475.
By virtue of the application of these statutes, Bolz was entitled to have the jury determine each party's percentage of negligence or fault in causing the injury. If Bolz was less than 60% at fault, he would be responsible to pay damages only for his percentage of fault. Clearly, Herrera is "liable for injury caused by his act or omission to the same extent as a private person" subject to any limitation set by the TCA. Ibid. The TCA provides the following significant limitation:
d. No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. . . .
[N.J.S.A. 59:9-2.]
See generally Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 329-30, 823 A.2d 26 (2003) (explicating the "permanent loss of a bodily function" threshold); Gilhooley v. County of Union, 164 N.J. 533, 539-41, 753 A.2d 1137 (2000) (same); Brooks v. Odom, 150 N.J. 395, 402-06, 696 A.2d 619 (1997) (same).
Here, the jury found that plaintiff did not sustain an injury meeting this TCA threshold. Therefore, regardless of the apportionment of fault, Herrera and Englewood are not liable for any damages to plaintiff. However, the apportionment interrogatory should have been answered because Bolz's percentage of liability for damages depends on this finding.
The jury never made that decision because it followed the jury instructions. The path set by the jury verdict sheet conflated the fault question with the damages question by asking:
3. Has Plaintiff, Anna Bolz, proven by a preponderance of the credible evidence that she sustained a permanent injury, that was proximately caused by defendant, Favian Herrera (and the City of Englewood)?
This led the jury to by-pass question 5 (the apportionment question).
The jury instructions should have had two separate interrogatories as to each driver, i.e., (1) was the driver negligent; and (2) if so, was that negligence a proximate cause of the accident. That inquiry would have allowed the jury to make a finding of negligence or fault and reach the next question, the determination of the percentage of negligence or fault of each driver. This would enable the court to properly apportion damages against Bolz.
Englewood and Herrera argue that because plaintiff could not recover any damages for pain and suffering pursuant to the *601 TCA because she did not sustain a permanent injury, it was not necessary to determine fault for the accident. We disagree. The TCA limits the award of pain and suffering damages when the injured party has not met the N.J.S.A. 59:9-2 threshold, but that does not mean a public employee is a party whose liability is not in dispute for purposes of the CNA. If the jury determines that the public employee was negligent and that such negligence was a proximate cause of the injury, the public employee would be liable in tort, although there is no award for pain and suffering. Here, however, plaintiff only sought damages for pain and suffering. This means that the public entity and employee are not liable for payment. But, as stated before, this percentage of negligence affects the apportionment of damages for Bolz's liability.
Herrera and Englewood argue that because they are "not joint tortfeasors with . . . Bolz, [they] cannot be liable for contribution." In support of this they cite the JTCL, which provides:
[T]he term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. A master and servant or principal and agent shall be considered a single tortfeasor.
[N.J.S.A. 2A:53A-1.]
We agree that Bolz cannot seek contribution from Herrera and Englewood because the jury specifically found that plaintiff did not meet the TCA threshold of substantial permanent injury. However, contribution is not the issue. The jury found both Bolz and Herrera negligent; therefore, they are "joint tortfeasors." While Bolz cannot seek contribution from Herrera and Englewood, he is entitled to know the extent of his own negligence or fault.
For guidance to trial courts, we add the following. In the future, when a plaintiff sues both private and public entity defendants, the jury should answer two specific interrogatories as to each defendant: (1) was this defendant negligent; (2) if so, did that negligence proximately cause plaintiff's damages. If more than one defendant was negligent and their negligence proximately caused plaintiff's injuries, the jury has to find what percentage of the total negligence or fault is attributable to each defendant.
Once the jury answers those questions, it should then determine whether or not plaintiff established a substantial permanent injury was proximately caused by a public entity defendant. Then the jury should fix damages. If necessary, the judge should ask specific interrogatories regarding categories of damages, i.e., pain and suffering, property damage, economic damages, etc. This will allow the trial judge to fashion an award consistent with the TCA, the JTCL and the CNA.

III
Bolz also contends that the judge "improperly charged the jury that plaintiff's treating doctor testified that she was asymptomatic prior to the accident." Specifically, Bolz argues that the charge relating to the weight to be given the testimony of Dr. Miller was improper. The judge stated that:
In this case the doctor, Dr. Miller, has testified that prior to the accident she [the plaintiff] was asymptomatic  no symptoms  in regard to her stenosis and arthritis of the spine, and that she became symptomatic subsequent to the accident. . . .
Dr. Miller had testified that he "didn't have any record that she's had prior back pain or injured her wrist in the past[.]"
*602 The Supreme Court has stated, "[i]t is fundamental that a trial court is not bound to instruct a jury in the language requested by a party. If the subject matter is adequately covered in the text and purport of the whole charge, no prejudicial error comes into existence." State v. Thompson, 59 N.J. 396, 411, 283 A.2d 513 (1971).
Here, taking the charge as a whole, the contested passage does not constitute error. Throughout the course of the trial and during the jury charge, the judge frequently reminded the jury that it is their recollection of the facts and their factual determinations that control. The jury was instructed that "[y]ou alone have the responsibility to decide the factual issues in this case. It is your recollection and evaluation of the evidence that controls[,]" and "you are to sift through the believable evidence and determine the persuasive weight which you feel should be assigned to it."
The jury heard Dr. Miller testify that he had no prior relationship with the plaintiff and that he had no records of her condition before the accident. The comment by the judge that Dr. Miller testified the plaintiff was asymptomatic does not amount to error when reading the jury charge as a whole and does not warrant a new trial on damages.

Conclusion
The liability judgment against Bolz is reversed and remanded for a new trial. The award of damages is affirmed. We do not retain jurisdiction.
NOTES
[1] The reference to plaintiff's tibia was apparently erroneous because the proofs at trial demonstrated a wrist fracture.